RECORD NUMBER: 14-1823

# United States Court of Appeals

*for the*

# Fourth Circuit

**DANNY RAY MARKS, JR.,**

*Appellant,*

– v. –

**SCOTTSDALE INSURANCE COMPANY,**

*Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND**

# OPENING BRIEF OF APPELLANT

JOHN J. RASMUSSEN
INSURANCE RECOVERY LAW
GROUP, PLC
P.O. Box 8049
Richmond, VA 23223
(804) 308-1359

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-1823__     Caption: __Danny Ray Marks, Jr. et al., v. Scottsdale Ins.Co.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Danny Ray Marks, Jr.__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                        ☐YES ☑NO
        If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ John J. Rasmussen                    Date: _____08/29/2014_____

Counsel for: Danny Ray Marks, Jr.

## CERTIFICATE OF SERVICE
**************************

I certify that on ____August 29, 2014____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ John J. Rasmussen                              08/29/2014
_____(signature)_____                      _____(date)_____

- 2 -

# TABLE OF CONTENTS

Corporate disclosure statement

Statement of subject matter and appellate jurisdiction ..................................... 1

Statement of issues presented for review ........................................................... 1

Statement of the case ........................................................................................... 2

    Statement of facts ........................................................................................... 2

    A.    Johnson shot Marks while Johnson was on a Club hunt .......................... 2

    B.    The policy endorsement covers members participating in Club
           activities ...................................................................................................... 3

Procedural history ................................................................................................. 4

Summary of argument ........................................................................................... 5

Standard of review ................................................................................................. 6

Argument ................................................................................................................ 7

I.    Governing law ............................................................................................... 7

    A.    Law governing summary judgment .......................................................... 7

    B.    Virginia's broad duty to defend ............................................................... 8

    C.    How to read Virginia policies ................................................................... 9

II.    The Policy protects Hunt Club members against their liability from Hunt
       Club activities ................................................................................................ 12

III.    Hunting is a Hunt Club "activity" ............................................................... 12

    A.    Webster's Third New International ........................................................... 13

    B.    Random House Webster's Unabridged ..................................................... 13

i

C.    New Oxford American ................................................................. 13

D.    The American Heritage ............................................................. 14

E.    Black's ........................................................................................ 14

F.    Merriam-Webster Online .......................................................... 15

G.    The opinion below contravenes Virginia law by ignoring the "ordinary and usual" meaning of activity as defined by dictionaries ...... 15

IV.    Scottsdale owes a duty to defend Johnson against the Marks suit because the complaint alleges potentially covered claims arising from Johnson's shooting Marks during a Hunt Club activity ......................................... 17

V.    Johnson shot Marks while on a Hunt Club hunt so Scottsdale must indemnify him for his liability to Marks ................................................. 18

VI.    The district court repeatedly relies on inapposite, out-of state authority ......... 19

Conclusion ............................................................................................ 21

Request for oral argument ................................................................... 23

Certificate of compliance

Certificate of service

# TABLE OF AUTHORITIES

## Cases

*Adams v. Trustees of the University of North Carolina-Wilmington*,
  640 F.3d 550 (4th Cir. 2011) ...................................................................6

*AES Corp. v. Steadfast Ins. Co.,*
  283 Va. 609, 725 S.E.2d 532 (2012) .......................................... 8, 17

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1987) ................................................................................7

*Buchanan v. Doe,*
  246 Va. 67, 431 S.E.2d 289 (1993) ......................................................8

*CACI Int'l Inc. v. St. Paul Fire & Marine Ins. Co.,*
  566 F.3d 150 (4th Cir. 2009) ................................................................6

*Continental Cas. Co. v. Burton,*
  795 F.2d 1187 (4th Cir. 1986) ...........................................................11

*Copp v. Nationwide Mut. Ins. Co.,*
  279 Va. 675, 692 S.E.2d 220 (2010) .......................................... 11, 17

*Everett Cash Mut. Ins. Co. v. Ins. Corp. of Hanover,*
  2008 U. S. Dist. LEXIS 76815 (M.D.Pa. 2008) .................................20

*Floyd v. Northern Neck Ins. Co.,*
  245 Va. 153, 427 S.E.2d 193 (1993) ..................................................10

*Fuisz v. Selective Ins. Co. of America,*
  61 F.3d 238 (1995) .......................................................................... 9, 17

*GEICO v. Moore,*
  266 Va. 155, 580 S.E.2d 823 (2003) .......................................... 10, 21

*Greater Balt. Ctr. for Pregnancy Concerns v. Baltimore,*
  721 F.3d 264 (4th Cir. 2013) ................................................................7

*KBS, Inc. v. Great Am. Ins. Co. of N.Y.,*
  2006 U.S. Dist. LEXIS 88520 (E.D. Va. Dec. 7, 2006) ....................16

*Lenox v. Scottsdale Ins. Co.*,
    2005 U.S. Dist. LEXIS 48883 (D.N.J. 2005) ....................................................20

*Lincoln Nat'l Life Ins. Co. v. Commonwealth Corrugated Container Corp.*,
    229 Va. 132, 327 S.E.2d 98 (1985) ....................................................................10

*Miller v. Emery Leathers*,
    913 F.2d 1085 (4th Cir. 1990)(*en banc*)................................................................7

*Parker v Hartford Ins. Co.,*
    222 Va. 33, 278 S.E.2d 803 (1981) ............................................................... 8, 17

*Seals v. Erie Ins. Exch.*,
    277 Va. 558, 674 S.E.2d 860 (2009) ............................................................. 6, 10

*St. Paul Fire & Marine Ins. Co. v. S. L. Nusbaum & Co.*,
    227 Va. 407, 316 S.E.2d 734 (1984) ........................................................... 10, 11

*State Farm Fire & Cas. Co. v. Walton*,
    244 Va. 227, 475 S.E.2d 267 (1992) ........................................................... 10, 21

*Transcontinental Ins. Co. v. RBMW, Inc.*,
    262 Va. 502, 551 S.E.2d 313 (2001) ...................................................................10

*Virginia Farm Bureau Mut. Ins. Co. v Williams*,
    278 Va. 75, 677 S.E.2d 299 (2010) ....................................................................11

*White v. State Farm Mut. Ins. Co.,*
    208 Va. 394, 157 S.E.2d 925 (1967) ..................................................................11

## Rules and Statutes

28 USC § 1291 ......................................................................................................1

28 USC § 1332 ......................................................................................................1

Fed.R.Civ.P. 56(c)................................................................................................7

**Other Authorities**

*American Heritage Dictionary of the English Language* 17 (5th ed. 2011)....................14

*Black's Law Dictionary* 41 (10th ed. 2009) .................................................14

*Merriam-Webster Online Dictionary* http://www.merriam-webster.com/dictionary/activity .................................................... 6, 15

*New Oxford American Dictionary* 16 (3d ed. 2010) ............................... 5, 14

*Random House Webster's Unabridged Dictionary* 20 (2nd ed. 2001) ..........................13

*Webster's Third New International Dictionary* 22 (1993).......................... 5, 13

# STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The district court had jurisdiction under 28 USC § 1332 with diversity and over $75,000 in dispute. This Court has jurisdiction under 28 USC § 1291. Final judgment was entered on July 30, 2014.[1] Marks appealed within 30 days of that judgment, on August 16, 2014.[2]

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

Timothy Johnson unintentionally shot and badly hurt Danny Marks while Johnson was hunting with other members and guests of the Northumberland Hunt Club (the "Hunt Club"). Marks had been driving by, on a public road, property commonly used by the Hunt Club for its hunts, including that day.

Scottsdale sold the Hunt Club a policy (the "Policy") with an endorsement (the "Endorsement") that included the club's members as insureds "but only with respect to their liability for your [the Hunt Club's] activities"

The case presents two intertwined issues. Is hunting a Hunt Club activity? And is Johnson's liability for shooting Marks while hunting with the Hunt Club "liability for [the Hunt Club's] activities"?

---

[1] JA 392
[2] *Id.* 393

1

As to the duty to defend, it hinges on the allegations in the underlying complaint. As to the duty to indemnify, it hinges on the facts.

## STATEMENT OF THE CASE

### Statement of the facts

### A.    Johnson shot Marks while Johnson was on a Club hunt

The underlying complaint alleges that Johnson was hunting on land leased by the Club when he shot Marks.[3] Undisputed deposition testimony shows that on that day, Johnson was hunting on land regularly used by the Club with permission for it to hunt there, with other Club members and Club guests, in an organized Club hunt.[4]

Hunts like and including the hunt at issue were a Club activity.[5] The Club bylaws, in their first section, identify the Club's purpose as ""to provide an opportunity for members to collectively work together to enjoy safe environment [sic] for hunting …"[6] And Johnson was a member of the Club

---

[3] JA 213.1 ¶¶6-9, 22
[4] JA 217 at 39:12-16 (Q: Was there a club hunt that took place on January 3, 2013? A: Yes.;")  Id. at 39:21-40:4 (seven members and two guests were part of that hunt); JA 233 at 67:5-9 (agreeing that the January 3, 2013 hunt he was on when he shot Marks was "an organized activity of the hunt club."); 33:5-25 (Club had permission to use the land where shooting happened for a long time)
[5] JA 213.1 ¶¶ 3, 6, 9, 22-24; JA 217 at 45:20-46:9, 22:10-13, JA 233 at 58:12-14, 22-25, 62:17-19
[6] JA 214

when the shooting happened, based on both the complaint's allegations and the undisputed evidence.[7]

Johnson took aim at a deer, but instead he hit Marks, who was driving his vehicle down a public road alongside the land where Johnson and other Club members and guests were hunting.[8] That shooting caused bodily injury to Marks.[9] Those injuries resulted from an "occurrence" as defined in the Policy.[10]

Marks sued Johnson and others.[11] Scottsdale denied Johnson coverage.

## B.    The policy endorsement covers members participating in Club activities

Scottsdale sold the Policy to the Club listing it as the sole named insured that was in effect when Johnson shot Marks.[12] That Policy provided $1 million in per accident limits for bodily injury caused by an occurrence.[13]

The Policy includes the following endorsement, adding members as insureds.[14]

---

[7] JA 213.1 ¶ 23; JA 217 at 18:19-22, 47:20-22; JA 233 at 16:9-11, 17:24-18:8, 18:25-19:3, 23:25-24:8
[8] JA 213.1 ¶¶ 16-19
[9] *Id.* ¶ 34
[10] *Id.* ¶¶ 21, 29; JA 156 (defining "occurrence")
[11] JA 213.1
[12] JA 136 (listing Northumberland Hunt Club as the only named insured, and identifying its activity as a "hunt club."
[13] JA 141 (stating limits), Id. 155 (defining "bodily injury"), Id. 156 (defining "occurrence")
[14] *Id.* 160

"WHO IS AN INSURED is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf."[15]

How to read that endorsement and apply it to the underlying complaint's allegations as well as the undisputed facts provide the core issues on appeal.

**Procedural history**

Marks sued Johnson and the Hunt Club in the underlying tort suit.[16] Marks then filed this declaratory judgment coverage action in December 2013.[17]

Scottsdale removed it.[18] It then sought to join Johnson.[19] With all the parties consent, the district court ordered joinder.[20]

Johnson sought and received bankruptcy protection.[21] The bankruptcy court allowed this action to proceed to the extent of Johnson's available insurance.[22]

---

[15] *Id.*
[16] *Id.* 313.1 at ¶¶ 20-31
[17] *Id.* 9
[18] *Id.*
[19] *Id.* 101
[20] *Id.* 128
[21] *Id.*
[22] *Id.* 126

After discovery, the parties filed cross-motions for summary judgment. Following briefs, the district court entered the opinion below, granting Scottsdale's motion, denying Marks' motion, and entering final judgment.[23]

Marks appealed.

## SUMMARY OF ARGUMENT

This appeal presents two central questions: (1) was hunting an "activity" of the Hunt Club under the Policy; and (2) was Johnson hunting with the Hunt Club when he shot Marks?

Virginia law looks to dictionary definitions to determine what undefined policy terms mean. Here are a few that obviously include "hunting" as a Hunt Club "activity."

"… 5 a: an occupation, pursuit or recreation in which a person is active – often used in pl. <business ~> <social ~> b: a form of organized, supervised, and often extracurricular recreation (as athletic games, dramatics, or dancing) …" *Webster's Third New International Dictionary* 22 (1993).

"…2. A thing that a person or group does or has done: *the firm's marketing activities.*" A recreational pursuit or pastime: *a range of sports activities.* Actions taken by a group in order to achieve their aims: *the police were investigating anarchist activities* …" *New Oxford American Dictionary* 16 (3d ed. 2010).

---

[23] *Id.* 392-393

"[S]omething that is done for pleasure and that usually involves a group of people" *Merriam-Webster Online Dictionary* http://www.merriam-webster.com/dictionary/activity.

Considering those definitions alongside the allegations in the underlying complaint and the undisputed facts establishes that the answer to both questions is yes, and Scottsdale thus owes Johnson both a duty to defend and to indemnify.

## STANDARD OF REVIEW

Interpreting undisputed policy terms presents a legal question reviewed *de novo. Seals v. Erie Ins. Exch.*, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009); *CACI Int'l Inc. v. St. Paul Fire & Marine Ins. Co.* 566 F.3d 150, 154-55 (4th Cir. 2009). Summary judgment grants are also reviewed *de novo. Adams v. Trustees of the University of North Carolina-Wilmington*, 640 F.3d 550, 556 (4th Cir. 2011).

## ARGUMENT

### I.    Governing law

#### A.    Law governing summary judgment

Under Rule 56(c), courts grant summary judgment if the movant shows no genuine issue exists as to any material fact.

A "material fact" is one that might affect a case's outcome. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1987). Whether a fact is material turns on the substantive law. Summary judgment is proper only where a "… reasonable [fact-finder] could not return a verdict for the nonmoving party." *Id.*

When considering summary judgment motions, the courts do not weigh the evidence to enter a judgment, but simply determine if a genuine issue exists for trial. *Greater Balt. Ctr. for Pregnancy Concerns v. Baltimore*, 721 F.3d 264, 283 (4th Cir. 2013).

This Court has held, *en banc*, that in deciding summary judgment motions, the "facts and inferences to be drawn from the facts must be viewed in the light most favorable to the non-moving party, and this party is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." *Miller v. Emery Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990)(*en banc*).

That law governs the analysis below.

### B.     Virginia's broad duty to defend[24]

Virginia uses the "eight corners" test to resolve an insurer's duty to defend. That test compares the policy's four corners to the complaint's four corners.

"[I]t is a well-established principle, consistently applied in this Commonwealth, that only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured. This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy, to determine whether the allegations in the underlying complaint come within the coverage provided by the policy." (Citations omitted.) *AES Corp. v. Steadfast Ins. Co.* 283 Va. 609, 616-617, 725 S.E.2d 532, 535 (2012).

Under that rule, "[w]hen an initial pleading alleges facts and circumstances, *some* of which would, if proved, fall within the risk covered by the policy, the insurance company is obligated to defend the insured." (Emphasis supplied.) *Parker v Hartford Ins. Co.,* 222 Va. 33, 35, 278 S.E.2d 803, 804 (1981).

---

[24] Nobody argues Virginia law does not apply to this policy delivered in Virginia. *Buchanan v. Doe,* 246 Va. 67, 70-71, 431 S.E.2d 289, 291 (1993); see Policy for delivery address JA 136

8

Non-covered allegations do not eliminate the duty to defend when the complaint has covered allegations. "Only when it appears clearly the insurer would not have been liable under its contract for *any* judgment based on the allegations, does the company have no duty to defend." (Emphasis in original.) *Id.* at 35, 278 S.E.2d at 804.

This Court applied that rule in *Fuisz v. Selective Insurance Co. of America*, 61 F.3d 238 (1995). It held that "if there is any ambiguity regarding potential coverage, the insurer must provide a defense." *Id.* at 242. "If a complaint, however ambiguous, may be read as premising liability on alternative grounds, and either ground states liability potentially or arguably covered by the policy, the insured is entitled to a defense." *Id.*

So "where both covered and excluded acts are alleged, the duty to defend attaches." *Id.* at 245.

That law also governs the analysis below.


**C.    How to read Virginia policies**

As with the duty to defend, settled Virginia law governs how to apply policy terms. The central premise: any uncertainty resolves against the insurer. Why? It chose the words.

In construing policies, courts look first to the text. "Courts interpret insurance policies … in accordance with the intention of the parties gleaned

9

from the words they have used in the document." *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562, 674 S.E.2d 860, 862 (2009); *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993).

Unless defined, words in a policy have "their ordinary and usual meaning" when they are susceptible of such construction. *State Farm Fire & Cas. Co. v. Walton*, 244 Va. 227, 231, 475 S.E.2d 267, 270 (1992). Or, as stated in another case, courts apply policy terms in their "plain, ordinary, and popular sense." *GEICO v. Moore*, 266 Va. 155, 164, 580 S.E.2d 823, 828 (2003).

Specifically, courts applying Virginia law look to dictionary definitions to decide policy terms' meaning. *See Transcontinental Ins. Co. v. RBMW, Inc.*, 262 Va. 502, 508; 551 S.E.2d 313, 316 (2001).

Virginia law resolves all ambiguities against the carrier. "Insurance policies are contracts whose language is ordinarily selected by insurers rather than by policyholders." *St. Paul Fire & Marine Ins. Co. v. S. L. Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984).

"The courts, accordingly, have been consistent in construing the language of such policies, where there is doubt as to their meaning, in favor of that interpretation which grants coverage, rather than that which withholds it." *Id.* at 411, 316 S.E.2d at 736; *Seals*, 277 Va. at 562, 674 S.E.2d at 862.

"[A]n ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." *Lincoln*

*Nat'l Life Ins. Co. v. Commonwealth Corrugated Container Corp.*, 229 Va. 132, 136-137, 327 S.E.2d 98, 101 (1985).

An ambiguity also exists if two readings are reasonable. So coverage exists if "… reasonable men … may reach reasonable, but opposite, conclusions …" *Nusbaum*, 227 Va. at 411, 316 S.E.2d at 736."

"[W]hen an insurer seeks to limit coverage under a policy, the insurer must use language that is reasonable, clear, and unambiguous." *Virginia Farm Bureau Mut. Ins. Co. v Williams*, 278 Va. 75, 81, 677 S.E.2d 299, 302 (2010).

Also, "Virginia law requires the insurance carrier to prove that the loss is excluded from the terms of the policy." *Continental Cas. Co. v. Burton*, 795 F.2d 1187, 1191 (4th Cir. 1986) *citing White v. State Farm Mut. Ins. Co.*, 208 Va. 394, 396, 157 S.E.2d 925, 927(1967).

Moreover, text purporting to exclude certain liability from coverage is construed most strongly against the carrier. *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 675, 681 692 S.E.2d 220, 223 (2010).

## II.    The Policy protects Hunt Club members against their liability from Hunt Club activities

The Endorsement provides that "WHO IS AN INSURED is amended to include as an insured any of your members, but only with respect to their liability for your activities or activities they perform on your behalf."[25]

That endorsement has two parts. The first includes members as insureds. The second excludes those Hunt Club members who are not liable for the Hunt Club's activities or in connection with activities they perform on its behalf.

Here, Johnson is liable to Marks for his conduct during a Hunt Club's activity: a hunt.[26]

## III.    Hunting is a Hunt Club "activity"

As set forth above, Virginia law uses dictionary definitions to determine what undefined policy terms mean.

Here is how several established dictionaries define "activity," and analysis showing each definition includes Hunt Club hunts within "activity."

---

[25] JA 160
[26] Marks does not contend Johnson is liable to him for "activities [Johnson] performed on [the Hunt Club's] behalf," so that second prong is not otherwise addressed on appeal.

### A.    Webster's Third New International

"1. The quality or state of being active <the sphere of his ~> <solar ~>… 5 a: an occupation, pursuit or recreation in which a person is active – often used in pl. <business ~> <social ~> b: a form of organized, supervised, and often extracurricular recreation (as athletic games, dramatics, or dancing) …" *Webster's Third New International Dictionary* 22 (1993).

The hunt here falls within that definition. Hunting is a "recreation" in which the Hunt Club is active. It is also a Club-organized "extracurricular recreation."

### B.    Random House Webster's Unabridged

"… 2. A specific deed, action, function, or sphere of action: *social activities* …" *Random House Webster's Unabridged Dictionary* 20 (2nd ed. 2001).

This definition also includes Hunt Club hunts. Hunting necessarily constitutes a specific function of a club organized for hunting.

### C.    New Oxford American

"1. The condition in which things are happening or being done: *There has been a sustained level of activity in the economy. 16, they say, is too young for sexual activity* …" 2. A thing that a person or group does or has done: *the firm's marketing activities*." A recreational pursuit or pastime: *a range of sports activities.* Actions

13

taken by a group in order to achieve their aims: *the police were investigating anarchist activities …" New Oxford American Dictionary* 16 (3d ed. 2010).

Again, hunting certainly qualifies as a "thing that [the Hunt Club] does or has done. And it is a "recreational pursuit or pastime" of the Hunt Club. Likewise, given the Hunt Club's undisputed stated purpose in its bylaws,[27] hunting is an "[a]ction taken by the Hunt Club in order to achieve [its] aims."

### D.    The American Heritage

"1. The state of being active … 3.a A specified pursuit in which a person partakes …" The *American Heritage Dictionary of the English Language* 17 (5th ed. 2011).

As with prior definitions, this one also encompasses Hunt Club hunts. Hunting is a "specified pursuit in which [the Hunt Club] partakes."

### E.    Black's

"1. The collective acts of one person or of two or more people engaged in a common enterprise." *Black's Law Dictionary* 41 (10th ed. 2009).

Hunting is a collective act of the [Hunt Club members and guests] engaged in a common enterprise." Hunting and the distributing the meat from the hunt.

---

[27] JA 214

### F.    Merriam-Webster Online

"[S]omething that is done for pleasure and that usually involves a group of people" *Merriam-Webster Online Dictionary* http://www.merriam-webster.com/dictionary/activity.

Hunt Club hunts squarely fall within "something that is done for pleasure and that usually involves a group of people."

### G.    The opinion below contravenes Virginia law by ignoring the "ordinary and usual" meaning of activity as defined by dictionaries

Under any of those definitions, how can "hunting" not be a Hunt Club activity? Yet the opinion below does not even mention, let alone analyze, any definition to determine "activity's" "ordinary and usual meaning."

Rather, that opinion adopted a strained, constricted meaning of "activity" stated in an unpublished opinion from a Pennsylvania United States District Court applying Pennsylvania law.[28]

That opinion found "activity" means "suing and being sued, participating in judicial proceedings, acquiring and owning real property, and borrowing money, among other activities."[29]

---

[28] JA 387
[29] JA 385, 387

That "activity" definition is far narrower than any definition cited above. And nothing in the Endorsement limits or modifies the ordinary and customary meaning of "activity" in that way. Rather, the only modifier of "activity" actually in the endorsement is text limiting coverage to members for liability as part of "your" activity, meaning the named insured Hunt Club's activity.[30]

Hence, in finding for Scottsdale, the opinion below puts words in the Policy not in the written document. Virginia law does not allow courts to rewrite policies. *KBS, Inc. v. Great Am. Ins. Co.* of N.Y., 2006 U.S. Dist. LEXIS 88520, *17 (E.D. Va. Dec. 7, 2006). (Absent a reformation claim, which was not brought here.)

Thus, under activity's plain meaning, based on multiple dictionary definitions, the hunt resulting in Marks' injuries was unambiguously a Hunt Club "activity."

Yet even if the district court's assigned meaning is also reasonable, so is Marks'. And if two reasonable meanings exist, that leaves an ambiguity, and the meaning providing coverage applies.[31] Even more so because the endorsement

---

[30] *Id.* 160

[31] The district court suggests plaintiffs' main argument is that "activity" is ambiguous. JA 370, 378, 380. Marks does not rely on that argument as his strongest point. Rather, his brief specifically argued "activity" unambiguously included Johnson's involvement in the Hunt Club hunt leading to the injury here. ECF Dkt.# 44 at Page ii, 6

excludes some conduct of members from coverage. *Copp*, 279 Va. at 681 692 S.E.2d at 223.

### IV. Scottsdale owes a duty to defend Johnson against the Marks suit because the complaint alleges potentially covered claims arising from Johnson's shooting Marks during a Hunt Club activity

Scottsdale owes a duty to defend Johnson if (1) it is alleged he was a Hunt Club member and (2) a suit has allegations showing that the liability arose from the Hunt Club's activity.

The complaint expressly alleges he was a Club member.[32] The complaint further alleges the hunting was a Club activity in which Johnson participated when he shot Marks.[33]

But the opinion below does not follow Virginia law on the duty to defend; it never cites – let alone analyzes – any allegations in underlying complaint in finding no such duty existed.[34]

Rather, it twice cites the "undisputed facts." But the duty to defend under a Virginia policy does not hinge on facts, undisputed or otherwise. It hinges on the complaint's allegations and the policy terms.

When analyzed under that law, including *AES, Parker,* and *Fuisz,* Scottsdale owes Johnson a defense.

---

[32] JA 213.1 ¶ 23
[33] *Id.* ¶¶ 3, 6, 9, 22-24
[34] JA 390

17

**V.    Johnson shot Marks while on a Hunt Club hunt so Scottsdale must indemnify him for his liability to Marks**

The undisputed facts place Johnson's conduct within coverage provided by the Endorsement.

The Club, through its president, testified that its main activity was hunting.[35] "Q: What does the hunt club do? A: Hunt. I mean that's basically why we're together …"[36]

The Club's testimony also specifically tracked hunting as falling within some definitions of "activity" set forth above. For example, it agreed "hunting is a pursuit in which the hunt club partakes."[37] And it also agreed that hunting is "a thing that the club does or has done."[38] No contrary evidence exists in the record.

In his own deposition, Johnson also agreed when he shot Marks he was on was "an organized activity of the hunt club."[39] He further agreed that hunting was "the only activity the … hunt club was involved in."[40]

He likewise agreed that the Club members engaged in the "common enterprise" of "hunting."[41] No contrary testimony exists in the record.

---

[35] JA 217 at 45:20-46:9
[36] *Id.* at 22:10-13
[37] *Id.* at 46:10-12
[38] *Id.* at 46:13-15
[39] JA 233 at 67:5-9
[40] *Id.* at 58:12-14, see also Id. at 22-25, 62:17-19
[41] *Id.* at 59:11-15

The opinion below is silent as to that deposition testimony, thereby effectively "weighing" it – by ignoring it. That goes beyond the scope of a court's role in deciding summary judgment motions.

Moreover, the depositions are not the only undisputed evidence. The Hunt Club's bylaws list hunting as the Club's purpose.[42]

Perhaps even more importantly, if hunting was not a Hunt Club activity, why did its bylaws mandate how to divide up the meat after any Hunt Club hunt?[43] And why did the Hunt Club lease and mark property for its members to hunt on?[44]

At the very least, all that evidence – by itself – prevents summary judgment for Scottsdale by at a minimum creating an issue of fact as to whether "hunting" was a Hunt Club activity. Indeed, as that testimony is undisputed, it supports summary judgment for Marks (and Johnson).

## VI.    The district court repeatedly relies on inapposite, out-of state authority

Virginia law explains how to discern what words in a policy mean – use dictionaries. Instead of doing that, the district court cites two unpublished, out-

---

[42] JA 214 ¶ I.A.

[43] *Id.* ¶¶ IV. A-B

[44] *Id.* 373 citing Johnson Dep. 35:23-25, 36:1-3; McIver Dep. 25-2-24, 27:3-24

of-circuit cases applying law from other states.[45] *Everett Cash Mut. Ins. Co. v. Insurance Corp. of Hanover*, 2008 U. S. Dist. LEXIS 76815 (M.D.Pa. 2008). *Lenox v. Scottsdale Ins. Co.*, 2005 U.S. Dist. LEXIS 48883 (D.N.J. 2005).

In *Everett Cash*, the insured argued he had insured status under a hunt club policy whenever he was hunting, at all, anywhere, with anyone, even if not on a club-organized hunt. 2008 U.S. Dist. LEXIS 76815 at **19-20.

Marks does not argue the Policy covers him for all hunting accidents, unlike the person seeking coverage in *Everett Cash*; Johnson only seeks coverage for an accident on a Club hunt, while hunting with Club members and guests, on property the Club had secured permission to hunt on.

As to *Lenox,* the court expressly declined to address the facts here. It acknowledged club "activities" might include "events organized and run by the Club itself, such as the annual Club picnic. 2005 U. S. Dist. LEXIS 48883 at **11-12. But that court did not address that point, because "the simple fact is Plaintiff was not attending any Club sponsored event when the accident happened." *Id.* at *12. Not so here.

So neither of the core cases repeatedly used to support the opinion below has persuasive force here.

---

[45] JA 380-81, 385-86

# CONCLUSION

As shown above, the allegations in the underlying complaint show that a court could enter a judgment against Johnson and in Marks' favor for Johnson's "liability for [the Hunt Club's] activities." That follows from the "ordinary and usual meaning" of "activity." *Walton*, 244 Va. at 231, 475 S.E.2d at 270. It also follows from how "activity" is applied in its "plain, ordinary, and popular sense." *Moore*, 266 Va. at 164, 580 S.E.2d at 828. The district court's constricted application of "activity," borrowed from non-published, non-binding, factually distinguishable, out-of-state authority, should not control under Virginia law. Hence, Scottsdale owes a duty to defend Johnson against Marks' underlying suit.

Likewise, the undisputed testimony and documents show that Johnson's liability to Marks also constitutes "liability for [the Hunt Club's activities" – a club hunt during which Johnson shot Marks. Thus, Scottsdale also must indemnify Johnson for his liability to Marks.

Therefore, Marks respectfully asks that this Court reverse the district court and instead order summary judgment in Marks' favor on the duty to defend and the duty to indemnify.

21

Respectfully submitted,

DANNY RAY MARKS, JR.

_____/s/John J. Rasmussen_____

By Counsel

John J. Rasmussen
Virginia State Bar No. 45787
Co-counsel for Danny Ray Marks, Jr.

INSURANCE RECOVERY LAW GROUP, PLC
PO Box 8049
Richmond, Virginia 23223-0049
Telephone:   (804) 308-1359
Facsimile:   (804) 308-1349
E-mail:      jjr@insurance-recovery.com

## REQUEST FOR ORAL ARGUMENT

Marks hereby requests oral argument. This case presents a factual situation that has not yet been directly addressed under Virginia law.

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** _14-1823_    **Caption:** _Danny Ray Marks v. Scottsdale Insurance Company_

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓] this brief contains _____4,062_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ] this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓] this brief has been prepared in a proportionally spaced typeface using
   _Microsoft Word 2010_____ [*identify word processing program*] in
   _Garamond, 14 Point_____ [*identify font size and type style*]; **or**

   [ ] this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) _John J. Rasmussen_____

Attorney for _Appellant_____

Dated: _10/22/2014_____

# CERTIFICATE OF SERVICE

I certify that on  10/22/2014          the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

John B. Mumford, Jr.
Eileen R. Geller
Hancock, Daniel, Johnson & Nagle, PC
4701 Cox Road
Suite 400
Glen Allen, VA  23060
(804) 967-9604

| | |
|---|---|
| /s/ John J. Rasmussen | 10/22/2014 |
| Signature | Date |